IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KYLE EVAN GOERNDT,<br><br>Defendant. | CR 20-125-BLG-SPW<br><br>ORDER ON MOTION TO DISMISS |

Before the Court is Defendant Kyle Evan Goerndt's Motion to Dismiss Indictment pursuant to Federal Rules of Criminal Procedure 12 and 47 for failure to state an offense. (Doc. 25). Defendant supports this motion with a brief. (Doc. 26). The Government opposes the motion and filed a response brief. (Doc. 29). Defendant filed a reply. (Doc. 31). After reviewing the parties' arguments, the Defendant's motion is denied for the following reasons.

I.   **Background**

Defendant pled guilty to and was convicted of misdemeanor partner or family member assault under Mont. Code. Ann. § 45-2-206(1)(a) in Baker City Court on May 12, 2015. (Doc. 29-1). Defendant is now charged with being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(9),

1

when he knowingly and unlawfully possessed a firearm knowing he was convicted of a misdemeanor crime of domestic violence. (Doc. 3). Defendant now argues that the indictment must be dismissed because, in Goerndt's view, his prior misdemeanor conviction for partner family member assault ("PFMA") cannot serve as a predicate a misdemeanor crime of domestic violence as defined by 18 U.S.C. § 921(a)(33). (Doc. 26 at 1).

Defendant argues that because use of force is not an element of Montana's statute, it cannot qualify as a predicate. (Doc. 26 at 4). In support, Defendant cites a series of cases holding that Montana's PFMA statute does not qualify as a crime of violence under the Armed Career Criminal Act. (Doc. 26 at 7). In response, the Government cites to *United States v. Castleman*, 572 U.S. 174 (2014), in which the Supreme Court held that "domestic violence" because it is a term of art, requires a lower level of force than the "crimes of violence" line of cases relied on by Defendant. (Doc. 29 at 5). Defendant, in reply, asserts that *Castleman* does not control because the Tennessee PFMA statute at issue defines bodily injury differently than Montana. (Doc. 31 at 3).

**II.     Analysis**

Congress forbids anyone convicted of a misdemeanor crime of domestic violence from possessing a firearm. 18 U.S.C. § 922(g)(9). The statute defines a misdemeanor crime of domestic violence as an offense that "(i) is a misdemeanor

2

under Federal, State, or Tribal law; and (ii) has, as an element, the use or attempted use of physical force" by a domestic partner. 18 U.S.C. § 921(a)(33). Defendant contends that Montana's misdemeanor PFMA, Mont. Code Ann. § 45-5-206(1)(a) statute does not include use of physical force as an element. (Doc. 20 at 3-4). Montana's statute, in relevant part, reads "A person commits the offense of partner or family member assault if the person: (a) purposely or knowingly causes bodily injury to a partner or family member." In the definitional section of the code, "bodily injury" is defined as "physical pain, illness, or impairment of physical condition and includes mental illness or impairment." Mont. Code Ann. § 45-2-101(5).

To determine whether a past conviction qualifies as a predicate offense under Federal law, courts use either the categorical approach or the modified categorical approach. Courts are not permitted to consider relevant conduct or the facts underlying the conviction in either case; they may only consult the elements of the predicate statute of conviction. *Taylor v. United States*, 495 U.S. 575, 600 (1990). If the statute is divisible, the modified approach allows courts to refer to a limited class of documents, such as the indictment or jury instructions, to ascertain which alternative formed the basis of the prior conviction. *Descamps v. United States*, 570 U.S. 254, 257 (2013). A divisible statute sets out one or more elements of the offense in the alternative. *Id.* The prior conviction qualifies as a predicate if

3

the crime either matches Congress's enumerated definition or if the statute's elements are the same as, or narrower than, those of the generic offense. *Id.*

The analysis has four steps. First, the court should identify the definition at issue. Next, determine the statute of conviction: if the statute contains multiple crimes and is divisible into separate crimes, use the modified approach. Then list the elements of the statute of conviction. Finally, compare the elements in the statute of conviction to those in the definition. If there is a match, the prior conviction qualifies. *See Descamps*, 570 U.S. at 257.

The Court will apply the four-step analysis described above. The statute at issue defines a misdemeanor crime of domestic violence as an offense that "(i) is a misdemeanor under Federal, State, or Tribal law; and (ii) has, as an element, the use or attempted use of physical force" by a domestic partner. 18 U.S.C. § 921(a)(33). The relevant statute of conviction is Mont. Code Ann. § 45-2-206(1), which states, "A person commits the offense of partner or family member assault if the person:

(a) purposely or knowingly causes bodily injury to a partner or family member;

(b) negligently causes bodily injury to a partner or family member with a weapon; or

4

> (c) purposely or knowingly causes reasonable apprehension of bodily injury in a partner or family member.

The Court must determine whether (a), (b), and (c) listed above describe three separate crimes with alternative sets of elements, or alternative means of committing the same crime. *Mathis v. United States*, 136 S. Ct 2243, 2248 (2016). Elements are the constituent parts of a crime's legal definition—they are the things the "prosecution must prove to sustain a conviction." *Id.* At a plea hearing, "they are what the defendant necessarily admits when he pleads guilty." *Id.* Means are illustrative examples; in a burglary charge, for instance, premises might be defined as "including a house, building, car, or boat." *Id.* at 2255.

The statute is divisible. The sections are listed disjunctively. One does not commit the crime of partner or family member assault by purposely or knowingly causing bodily injury, then negligently causing that injury with a weapon, and finally by purposely or knowingly causing reasonable apprehension of bodily injury in that partner or family member. These are all sets of alternative elements of committing the broader crime. The elements of a conviction are the mental state (purposely or knowingly), causation (causing bodily injury), and the status of the victim (a partner or family member), using section (1)(a) as an example. Accordingly, the Court will use the modified categorical approach.

5

It is clear from the signed municipal plea agreement that Defendant was convicted under Mont. Code Ann. § 45-2-206(1)(a), which is "purposely or knowingly caus[ing] bodily injury to a partner or family member". (Doc. 29-1 and 29-2). The final step is comparing the elements of the statute of conviction to the Federal definition. The question is whether purposely or knowingly causing bodily injury to a partner or family member qualifies as a crime under § 922(g)(9) that has use or attempted use of force as an element.

In *United States v. Castleman*, the Court addressed a nearly identical factual and legal situation as the present case. 572 U.S. 157 (2014). Castleman was convicted under Tennessee's misdemeanor partner or family member assault statute, Tenn. Code Ann. § 39-13-111(b), and several years later indicted on Federal firearms charges including violations of 18 U.S.C. § 922(g)(9). Castleman argued that his Tennessee PFMA conviction did not qualify because the state defined assault differently than the Federal statute. Tennessee defines partner or family member assault as "intentionally or knowingly caus[ing] bodily injury to" the mother of his child and defines bodily injury as including "a cut, abrasion, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Federal law defines the predicate offense as having, as an element, "the use or attempted use of physical force" by a domestic partner. *Castleman*, 572 U.S. at 169-70; 18 U.S.C. § 921(a)(33).

6

The Supreme Court first determined that, as applicable to the prohibition on firearms possession, domestic violence is a term of art and defined differently than other crimes of violence. "Domestic violence is not merely a type of violence; it is a term of art encompassing acts that one might not characterize as violent in a nondomestic context." *Castleman*, 572 U.S. at 165. The Court further reasoned:

> Minor uses of force may not constitute "violence" in the generic sense. For example, in an opinion that we cited with approval in *Johnson*, the Seventh Circuit noted that it was "hard to describe . . . as 'violence' 'a squeeze of the arm [that] causes a bruise.' *Flores v. Ashcroft*, 350 F. 3d 666, 670 (2003)." But an act of this nature is easy to describe as 'domestic violence,' when the accumulation of such acts over time can subject one intimate partner to the other's control. If a seemingly minor act like this draws the attention of authorities and leads to a successful prosecution for a misdemeanor offense, it does not offend common sense or the English language to characterize the resulting conviction as a 'misdemeanor crime of domestic violence.'

*Id.* at 165-66. The Court subsequently held that the requirement of "physical force" under § 922(g)(9) is satisfied by the degree of force that "supports a common-law battery conviction." *Id.* at 168.

Turning to Castleman's specific conviction, the Supreme Court found that the Tennessee statute was divisible (and therefore applied the modified categorical approach discussed above) and determined that a conviction under the statute necessarily includes the requisite force to satisfy the Federal statute because bodily injury must result from physical force and because the knowing or intentional application of force is a "use" of force under the statute. *Id.* at 170. The Court

7

concluded that Castleman's conviction for having "intentionally and knowingly cause[d] bodily injury" to the mother of his child qualifies as a "misdemeanor crime of domestic violence." *Id.* at 173.

Like Tennessee, Montana defines partner or family member assault as "purposely or knowingly caus[ing] bodily injury to a partner or family member." Mont. Code Ann. § 45-2-206(1)(a). The only relevant distinction between the state statutes is in the scope of what constitutes bodily injury. Montana defines bodily injury as "physical pain, illness, or impairment of physical condition and includes mental illness or impairment"—Tennessee uses "impairment of a [. . .] mental faculty." Mont. Code Ann. § 45-2-101(5); Tenn. Code Ann. § 39-11-106(a)(2). Defendant urges the Court to delineate between these definitions. In Defendant's view, Montana's statute is broader than Tennessee's because Montana uses "mental illness" in its definition. The Court finds *Castleman* controlling and finds the language pointed to in Defendant's argument to be a distinction without a difference.

The Federal statute here, § 921(a)(33), is an elements clause, rather than an enumerated clause. This means that the Court must compare the elements of the predicate offense to the applicable definition to find a match, rather than diving into the plain language of enumerated offenses and common law crimes, as it would under an enumerated clause. The Supreme Court determined that it is

"impossible to cause bodily injury without applying force in the common-law sense." *Castleman*, 572 U.S. at 170. Montana's statute requires bodily injury and therefore, under *Castleman*, an application of force. Accordingly, a misdemeanor conviction under Mont. Code Ann. § 45-2-206(1)(a) is a misdemeanor crime of domestic violence as defined by 18 U.S.C. § 921(a)(33) because it has use of force as an element.

Unlike in the Court's determination in *United States v. Ross*, 2017 WL 1288425 (D. Mont. 2017), relied on by Defendant, where the Court found that a conviction under Montana's PFMA statute was insufficient to qualify as a predicate offense under the Armed Career Criminal Act, the present case deals with a predicate offense of a misdemeanor crime of domestic violence and the lowered standard of force required to constitute "domestic violence" as defined by *Castleman*. The lexicological difference between "temporary illness or impairment of the function of a mental faculty" and "bodily injury . . . including mental illness or impairment" is negligible and insufficient to support a contrary holding to *Castleman*.

Additionally, the Supreme Court has determined that courts should be cautious when construing statutes narrowly and invaliding state laws—the issue is

particularly salient when domestic violence and firearms are intertwined.[1] The Court stated:

> "Where, as here, the applicability of a federal criminal statute requires a state conviction, we have repeatedly declined to construe the statute in a way that would render it inapplicable in many States. *See, e.g., United States v. Castleman*, 572 U. S. 157, 167, 134 S. Ct. 1405, 188 L. Ed. 2d 426 (2014) (reading "physical force" to include common-law force, in part because a different reading would render 18 U. S. C. § 922(g)(9) "ineffectual in at least 10 States"); *United States v. Voisine*, 579 U. S. ___, ___, 136 S. Ct. 2272, 195 L. Ed. 2d 736 (2016) (declining to interpret §921(a)(33)(A) in a way that would "risk rendering §922(g)(9) broadly inoperative" in 34 States and the District of Columbia)."

*Stokeling v. United States*, 139 S. Ct. 544, 552 (2019). This directive bolsters the Court's determination that Tymes's Montana conviction qualifies as a predicate offense under § 922(g)(9) given the strong public policy concerns posed by invalidating statutes that prevent gun ownership by domestic assailants. Congress intended to broadly prohibit firearm possession by domestic assault misdemeanants and, alongside the purely legal arguments presented above, Defendant has not presented a sufficiently compelling argument in favor of invalidating that congressional purpose here. *See Hayes v. United States*, 555 U.S. 415, 427 (2009).

---

[1] "This country witnesses more than a million acts of domestic violence, and hundreds of deaths from domestic violence, each year. *See Georgia v. Randolph*, 547 U. S. 103, 117-118, 126 S. Ct. 1515, 164 L. Ed. 2d 208 (2006). Domestic violence often escalates in severity over time, *see* Brief for Major Cities Chiefs Association et al. as Amici Curiae 13-15; Brief for National Network to End Domestic Violence et al. as Amici Curiae 9-12, and the presence of a firearm increases the likelihood that it will escalate to homicide, *see id.*, at 14-15; Campbell et al., Assessing Risk Factors for Intimate Partner Homicide, DOJ, Nat. Institute of Justice J., No. 250, p. 16 (Nov. 2003) ("When a gun was in the house, an abused woman was 6 times more likely than other abused women to be killed"). "[A]ll too often," as one Senator noted during the debate over §922(g)(9), "the only difference between a battered woman and a dead woman is the presence of a gun." 142 Cong. Rec. 22986 (1996) (statement of Sen. Wellstone)." *Castleman*, 572 U.S. at 159-60.

## III. Conclusion

Defendant's motion to dismiss the indictment (Doc. 25) is DENIED.

DATED this 30th day of April 2021.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge